639 A.2d 953

**H.S.S. VENDING DISTRIBUTORS, Petitioner,**

**v.**

**PENNSYLVANIA HUMAN RELATIONS COMMISSION, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Nov. 15, 1993.

Decided March 22, 1994.

**3.** See *Hershey Chocolate Co.*, 162 Pa.Commonwealth Ct. 23, 34 n. 2, 638 A.2d 336, 342 n. 2.

604

Arthur A. Asti, Jr., for petitioner.

V. Diane Blancett–Maddock, for respondent.

Before COLINS and SMITH, JJ., and DELLA PORTA, Senior Judge.

COLINS, Judge.

H.S.S. Vending Distributors (HSS Vending) petitions for review of the December 23, 1992 order of the Pennsylvania Human Relations Commission (PHRC) directing HSS Vending to cease and desist from discriminating against employees on the basis of their gender and awarding Helene Kruppa (Kruppa) $13,988.96 in back pay plus interest. We affirm.

HSS Vending hired Kruppa as a secretary on October 7, 1985. Kruppa's duties included typing, filing, answering the telephone, making appointments, and soliciting customers for HSS Vending's vending machine business. On January 10, 1986, HSS Vending terminated Kruppa's employment. Kruppa filed a complaint with the PHRC in May of 1986, alleging that HSS Vending terminated her employment because she

was pregnant, in violation of the Pennsylvania Human Relations Act (Act).[1]

The PHRC staff investigated Kruppa's complaint and found probable cause to support Kruppa's allegations that HSS Vending had violated Sections 5(a), 5(b)(1), and 5(b)(5) of the Act.[2] The parties unsuccessfully attempted to negotiate a settlement prior to the public hearing conducted by the PHRC on May 21, 1991. Kruppa and witnesses for HSS Vending testified at the hearing.

Kruppa testified to the following: that when HSS Vending first hired her, she was told that she would receive a raise after three months, if her evaluation was good; that before her termination, she had never received any warnings of poor performance or any reprimands; that she was never suspended or disciplined while working for HSS Vending; that she did not report late for work but instead complied with the owner's request to arrive early for work; that in December of 1985, the owner of HSS Vending, Richard Hersperger (Hersperger) congratulated her for doing a good job; and that she had missed only one day of work during the three months she worked for HSS Vending.

Moreover, with regard to her pregnancy, Kruppa testified that she first learned of her pregnancy from Planned Parenthood on January 6, 1986 and that on that date she left Hersperger a note on his door. Kruppa's note informed Hersperger that she was pregnant and would need to arrive

1. Act of October 27, 1955, P.L. 744, *as amended,* 43 P.S. §§ 951–962.2.

2. Section 5 of the Act, 43 P.S. § 955, provides, in pertinent part:
   It shall be an unlawful discriminatory practice, unless based upon a bona fide occupational qualification ...:
   (a) For any employer because of the ... sex ... of any individual or independent contractor, to refuse to hire or employ or contract with, or to bar or to discharge from employment such individual ... if the individual or independent contractor is the best able and most competent to perform the services required....
   (b) For any employer ... to:
   (1) Elicit any information ... concerning the ... sex, ... past handicap or disability ... or physical handicap of any applicant for employment or membership....
   ....
   (5) Deny employment because of a prior handicap or disability.

late to work the following day in order to see her doctor about the pregnancy. Kruppa also recalled that before she was terminated from her employment, she had directly notified Hersperger about her pregnancy.

Hersperger and two employees, James McDonald (McDonald) and Madeline Bologna (Bologna), testified on HSS Vending's behalf. Collectively, these witnesses testified that Kruppa was habitually late for work, that she frequently left work early, that she maintained her office in a disorganized manner, that she made too many typing errors, and that she exhibited a consistently poor attitude toward her work and her co-workers. Hersperger testified that he terminated Kruppa's employment for these reasons and that Kruppa's pregnancy did not factor into his decision, because he was not aware that Kruppa was pregnant when he fired her.

Additionally, McDonald testified that his employment began with a three-month probationary employment period. He recollected that, generally, employment with HSS Vending for any employee began with a three-month probationary period. McDonald's testimony supported HSS Vending's position that Kruppa's termination occurred at the end of the three-month probationary period, because HSS Vending decided not to offer Kruppa a permanent position because of her unsatisfactory performance.

After weighing the testimony of both parties, the PHRC resolved most, if not all, of the instances of conflicting evidence in favor of Kruppa. The PHRC made the following pertinent findings of fact:

## FINDINGS OF FACT

10. Upon being hired by [HSS Vending], [Kruppa] was told that if she received a good evaluation she would be entitled to a raise after three months.

11. [Kruppa] was never reprimanded by her supervisor or told that her performance was unsatisfactory.

12. [Kruppa] was never given any written warnings about her performance on the job.

13. [Kruppa] was never suspended or disciplined in any manner while in the employ of [HSS Vending].

14. In December of 1985, [Kruppa] was congratulated by Respondent owner Richard Hersperger for doing a good job.

15. [Kruppa] maintained a good working relationship with fellow employees and was never involved in any argument or confrontation with fellow employees.

16. [Kruppa] was never late for work, but rather complied with the owner's request to arrive early.

17. [Kruppa], while in the employ of [HSS Vending], only missed one day of work.

. . . .

28. Prior to January 10, 1986, [Kruppa] communicated directly to [Hersperger] that she was pregnant.

29. [Hersperger] did not verbally respond, but merely shook his head.

30. Mr. Hersperger asserted at the public hearing in this matter that he was unaware of [Kruppa's] pregnancy until she filed a complaint with the Pennsylvania Human Relations Commission.

31. However, in [HSS Vending's] answer, [Hersperger] stated "When she finally informed the office of her pregnancy it was somehow expected."

Moreover, while not addressing the issue in its findings of fact, the PHRC, in its decision, also debunked HSS Vending's assertion that Kruppa was never more than a probationary employee with HSS Vending. Accordingly, the PHRC determined that Kruppa had established a prima facie case of gender-based termination and had shown by a preponderance of the evidence that HSS Vending's proffered explanations for her termination were pretextual or unworthy of credence. HSS Vending filed the present appeal seeking review of the PHRC's decision and order.

■ Our scope of review of a PHRC matter is whether the adjudication is in accordance with the law, whether constitu-

tional rights were violated or whether the PHRC's findings are supported by substantial evidence. *Robert Wholey Company, Inc. v. Pennsylvania Human Relations Commission,* 146 Pa.Commonwealth Ct. 702, 606 A.2d 982, *petition for allowance of appeal denied,* 532 Pa. 659, 615 A.2d 1314 (1992). HSS Vending raises two issues on appeal.

First, HSS Vending asserts that the PHRC committed an error of law, when it concluded that Kruppa had established a prima facie case of gender-based termination. In order to establish a prima facie case of gender-based termination, Kruppa had the burden of proving: (a) that she was a member of a protected class; (b) that she was performing her job duties in a satisfactory manner; (c) that she was discharged from the position; and (d) that HSS Vending sought others with similar qualifications who were not pregnant to perform the same job duties. *Allegheny Housing Rehabilitation Corporation v. Pennsylvania Human Relations Commission,* 516 Pa. 124, 532 A.2d 315 (1987).

HSS Vending posits that Kruppa did not present sufficient evidence to prove that she was performing her job duties in a satisfactory manner. In its brief, HSS Vending supports its position by directing this Court to the testimony of its witnesses that Kruppa maintained her office in disarray, was habitually late for work, and exhibited a consistently poor attitude toward her work and her co-employees.

After reviewing the PHRC's findings of fact and the record testimony, we must disagree with HSS Vending's position. HSS Vending's assertions overlook the PHRC's role as fact finder. In discrimination cases, the PHRC has been recognized as an expert whose judgment will not be lightly substituted. *Orweco Frocks, Inc. v. Pennsylvania Human Relations Commission,* 113 Pa.Commonwealth Ct. 333, 537 A.2d 897 (1988). Moreover, credibility determinations are within the province of the PHRC as fact finder. *Robert Wholey Co., Inc.* In the present matter the PHRC properly determined that Kruppa's testimony was more credible than the testimony of Hersperger, McDonald, and Bologna.

Based on its credibility determinations, the PHRC found specifically that Kruppa was never late for work and maintained a good working relationship with fellow employees. The PHRC also discounted HSS Vending's allegation that Kruppa poorly maintained her office, because it found that HSS Vending's witness was not credible. The only testimony HSS Vending presented on the subject was that of Bologna, the secretary who replaced Kruppa approximately one month after Kruppa was terminated. Bologna testified that when she replaced Kruppa the office was in disarray. The PHRC discredited Bologna's testimony, stating that the testimony suggested only that the office had fallen into disarray during the month that HSS Vending was without secretarial services.

The PHRC's findings of fact support the conclusion that Kruppa performed her work duties in a satisfactory manner. Accordingly, we conclude that the PHRC did not commit an error of law, when it determined that Kruppa had presented a prima facie case of gender-based termination.

Second, HSS Vending asserts that the PHRC erred, when it determined that Kruppa had shown by a preponderance of the evidence that HSS Vending's proffered reasons for terminating Kruppa's employment were unworthy of credence or pretextual. HSS Vending contends that the record testimony demonstrates that Kruppa's employment was probationary and that Hersperger did not have knowledge of Kruppa's pregnancy prior to terminating her employment.

We must reject HSS Vending's position on this issue, because it is contradicted by the PHRC's findings of fact. The PHRC's Finding of Fact Nos. 28, 30, and 31 establish that Hersperger did know of Kruppa's pregnancy when he terminated Kruppa's employment. These findings reflect the PHRC's determination that Kruppa's testimony was more credible than Hersperger's testimony.

Moreover, although the PHRC's findings of fact did not address HSS Vending's probationary employment allegation, the PHRC's written decision soundly refuted HSS Vending's assertion that Kruppa was a probationary employee who was

appropriately terminated at the end cf the probation period. After reviewing the record, we agree with the PHRC's conclusion that Kruppa was not employed on a probationary basis and that her employment was always a matter over which Hersperger had complete discretion.

The PHRC's findings and the record testimony are consistent with the conclusion that Kruppa had proven by a preponderance of the evidence that HSS Vending's proffered reasons for terminating her employment were pretextual or not worthy of credence. The PHRC did not err in coming to this conclusion.

Accordingly, the PHRC's order is affirmed.

## ORDER

AND NOW, this 22nd day of March, 1994, the order of the Pennsylvania Human Relations Commission in the above-captioned matter is affirmed.