634 A.2d 836

**RUSSELL MINERALS FAYETTE, INC.**

v.

**ZONING HEARING BOARD OF FAYETTE COUNTY,**
**Fayette County Planning Commission, and**
**Fayette County Zoning Inspector.**

**Appeal of FAYETTE COUNTY ZONING**
**INSPECTOR, Appellant.**

Commonwealth Court of Pennsylvania.

Submitted Oct. 6, 1993.

Decided Dec. 1, 1993.

346

Robert L. Webster, Jr., for appellant.

Alan A. Garfinkel, for appellee.

Before CRAIG, President Judge, and DOYLE, COLINS, PALLADINO, McGINLEY, SMITH and KELLEY, JJ.

CRAIG, President Judge.

From Fayette County, which has pioneered in enacting and administering a countywide zoning ordinance in Pennsylvania, comes the Fayette County Zoning Inspector's appeal from a preliminary injunction order by Judge Solomon, of the Fayette County Court of Common Pleas, prohibiting the county zoning officials from interfering with the use of a specific soil fertilizer on land being reclaimed for pasture use by Russell Minerals Fayette, Inc., the appellee.

Of course, a preliminary injunction, although interlocutory, is nevertheless immediately appealable as of right under Pa.R.A.P. 311(a)(4). As the county inspector's brief accurately states, our review involves considering whether there is any reasonable basis for the trial court's order, which this court may reverse only if it is contrary to law or lacking in factual grounds to support it. *Pa. Central Realty Investment v. Middlesex Township*, 130 Pa.Commonwealth Ct. 18, 566 A.2d 931 (1989). Moreover, the grant of a preliminary injunction must be based, as a matter of law, upon a clear legal right and, as a matter of fact, on the prospect that immediate and irreparable harm would result if the injunction is not granted. *Township of South Fayette v. Boys Home*, 31 Pa.Commonwealth Ct. 254, 376 A.2d 663 (1977).

In accordance with Pa.R.A.P. 2116(a), providing that only points set forth in the Statement of Questions Involved can be considered on appeal, we note that the county inspector has presented only the following question:

Did plaintiff establish an entitlement to a preliminary injunction by proving a clear right to one and by proving that immediate and irreparable injury would result if the injunction were not granted?

No other issue concerning the preliminary injunction has been posed.[1]

1. The county, as the appellant here, has waived the issue of the absence of an injunction bond requirement in the trial court's preliminary injunction order. Pa.R.C.P. No. 1531(b) calls for a bond as a condition to a preliminary injunction order; but the county here raised no question as to a bond in the trial court, and has not preserved any such issue in the 'Statement of Questions Involved or otherwise in the brief.

In view of that omission, no such point, as to injunction bond, can be considered. Pa.R.A.P. 2116(a). This court has no authority to decide such a waived issue upon the court's own initiative. Recently, the Pennsylvania Supreme Court, in *Department of Transportation v. Boros*, 533 Pa. 214, 620 A.2d 1139, 1143 (1993), firmly declared:

An appellate court does not sit to review questions that were neither raised, tried or considered in the trial court.... Moreover, an appellate court can only pass upon the legal question involved in any case which comes before it. (Citations omitted.)

An appellate court may not sua sponte address an issue not raised by counsel, because it deprives counsel of the right to brief and argue the issues and it also deprives the court of the benefit of counsel's advocacy. *Wiegand v. Wiegand*, 461 Pa. 482, 337 A.2d 256 (1975).

Thus our Supreme Court has rightly declared that the judiciary should not ambush legal counsel by raising new issues as a basis for deciding a case. Usurping the role of counsel in that manner is forbidden even if counsel is forewarned and given an opportunity to address the new point on remand. *Department of Transportation v. Boros*.

Of course, if the appellate court itself lacks jurisdiction over the case (e.g., an appeal untimely filed), the court is obligated to confront that problem even if counsel have not brought it up, because a court cannot proceed ultra vires.

However, here there is no doubt as to the existence of this court's jurisdiction over the case at hand. As noted above, even though a preliminary injunction order is interlocutory, it is appealable to this court by virtue of Pa.R.A.P. 311(a)(4). And this court's jurisdiction to hear appeals from trial courts, where municipal laws and ordinances are drawn into question, is established by 42 Pa.C.S. § 762(a)(4)(i).

Moreover, precisely because a preliminary injunction lacking a bond condition can be held to be invalid, inoperative or a nullity (as noted below), this court necessarily must be able to exercise its appellate jurisdiction to negate such an improper injunction, at least where the matter has been raised before the court by counsel.

But, where the parties have—as in this case—waived the opportunity to question the absence of a bond requirement in the preliminary injunction order, can this court nevertheless inject that issue despite

Therefore, in analyzing this case in the context of the undisputed facts, this court must (1) resolve the key question of law relating to this injunction, i.e., decide if the county officials, under their statutory powers and zoning ordinance provisions, have any authority to regulate type of soil fertiliz-

counsel's waiver of it, on the theory that the *trial court* did not have jurisdiction?

Indeed, the cases—in addition to declaring that a preliminary injunction order issued without a bond condition, against a party not exempt from the bond mandate under Pa.R.C.P. No. 1531(b), is inoperative or a nullity—have stated that a trial court is "without jurisdiction" to issue a preliminary injunction without bond. *Baur v. Wilkes–Barre Light Co.*, 259 Pa. 117, 121–122, 102 A. 430, 431 (1917), quoted in *Surco Products Co. v. Kieszek*, 367 Pa. 516, 80 A.2d 842 (1951). And in *Mamula v. United Steelworkers*, 409 Pa. 175, 185 A.2d 595 (1962), the Supreme Court stated that the trial court had no power to issue an injunction without bond, and that Court then proceeded to vacate the trial court order for lack of jurisdiction.

But in such an instance, is there an absence of jurisdiction in the full sense of that concept, sufficient to warrant judicial intervention by way of introducing a question which counsel have not deigned to propound? There is no question but that the court of common pleas, in an equity proceeding before it, has jurisdiction, not only over the parties properly brought before it, but also over the subject matter of the equity claim. No other category of jurisdiction is known to our jurisprudence.

Where the trial court has exercised its undoubted jurisdiction to hear and decide an equity case and to issue a decision, can its framing of its order—even if so defective as to cause the order to be wholly vulnerable to an attack on its validity—divest the trial court of the subject matter jurisdiction which it has been exercising all along?

If an unspoken issue, as here, merely turns upon whether an injunction bond is required, and the party who would benefit from such a bond has not elected to raise that issue, such a point of injunction validity would not appear to amount to a jurisdictional question in the true sense of the propriety of the particular court's dealing with the case category at hand.

Under the procedural rules, the preliminary injunction is valid without bond if a public agency is the plaintiff. If the non-public defendant does not seek a bond, a ruling that it can waive that issue would not seem to impair the foundation of judicial involvement, i.e., to rise to a jurisdictional level warranting interference in the adversarial process by the appellate court's insistence on exploring a matter not treated by the parties.

Indeed, the county's decision not to insist on a bond may well be based upon a reasonable, common-sense view of the county that an interim application of fertilizer presents no realistic threat of pecuniary loss.

The bench should not interfere with the bar's prerogative to define the issues for decision where the parties have pursued the case in the proper court.

er, and (2) then consider whether immediate and irreparable harm faces the landowner, Russell Minerals.

## FACTS

The facts, as found by the trial court and recited in the briefs of the parties, are undisputed. Under § 400 of the Fayette County Zoning Ordinance, "mine processing" is allowed as a special exception, subject to zoning hearing board approval, in the M–2 Heavy Industrial Zone. In 1985, Russell Minerals applied to the board for a grant of that special exception to conduct a mine refuse disposal plant on a 235–acre site in the Heavy Industrial Zone for a period of five to seven years, to be followed by reclamation of the site as pasture land and grassland.

Pursuant to findings reciting those elements of the application, the board granted the special exception, subject to a prohibition of blasting at the site, and also subject to just four stated conditions:

1. Hours of operation would be 7 a.m. to 11 p.m.;
2. The applicant would file copies of all permits and any violation notices issued by any other agency;
3. All ponds would be fenced; and
4. The mine processing plant would be operated in compliance with state and federal laws and regulations.

At the board hearing, Russell Minerals provided testimony that the reclamation plan would consist of 12 inches of topsoil and seeding. The record does not disclose any representation by Russell Minerals, or any condition by the board, relating to fertilization of the land or type of fertilizer.

The trial judge also found that the Pennsylvania Department of Environmental Resources (DER) issued a permit to Russell Minerals in 1986 to reclaim the site by grading, applying topsoil and then applying lime and fertilizer to vegetate the site. He also found that, when the area failed to vegetate properly, DER, after administrative suggestion and a public hearing, issued a revised permit approving the use of

Alcosoil as an organic fertilizer in place of chemical fertilizers. As the trial judge noted, DER's approval was not appealed.

He also found that Alcosoil is a safe organic fertilizer and that, if the site does not vegetate properly, Russell Minerals could encounter substantial erosion and fines and penalties from DER.

After the county zoning inspector served upon Russell Minerals an order to cease and desist from using the Alcosoil fertilizer, Russell Minerals filed an action with the common pleas court, and Judge Solomon issued the preliminary injunction on appeal here, setting aside the county inspector's cease-and-desist order and barring any further interference with the fertilizer use.

## ANALYSIS

### 1. The Legal Rights—Special Exception Conditions

■ The precise question of law here is:

Where a zoning hearing board has granted a special exception for a seven-year mine refuse disposal activity, followed by reclamation of the land for pasture use, and the soil fertilization process and type of fertilizer are not regulated or mentioned in (1) any ordinance provision of the county, (2) any special exception condition imposed by the zoning hearing board, or (3) any representation by the applicant, do the county zoning officials have any power to regulate the agricultural activity of fertilizer use in land reclamation?

Of course, under § 912.1 of the Pennsylvania Municipalities Planning Code (MPC), Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. § 10912.1, a zoning hearing board has the power, in granting a special exception, to "attach such reasonable conditions and safeguards, in addition to those expressed in the ordinance, as it may deem necessary to implement the purposes of this act in the zoning ordinance."

Even if we assume that a zoning hearing board could have the power to specify fertilizer types in connection with special

exception approval of a land reclamation project, there is no question that the conditions attached here, as summarized above, do *not* deal with any agricultural aspects of the land reclamation, such as fertilization, and certainly make no mention of fertilizer type.

Russell Minerals told the board that it would be applying topsoil and would be seeding the land. Because topsoil is a matter distinct from fertilizer, the record contains no basis for any understanding on the part of any zoning official that the mention of topsoil negated the prospect of fertilizer use.

■ Moreover, even if the board possessed any such understanding, unspoken understandings by zoning officials do not amount to enforceable conditions. *City of Pittsburgh v. Elman Associates, Inc.*, 6 Pa.Commonwealth Ct. 1, 291 A.2d 813 (1972) (official's "understanding," as to building height relative to adjacent topography, could not amount to an enforceable condition of the project).

Although § 616.1(c)(3) of the MPC, 53 P.S. § 10616.1(c)(3), provides that a zoning enforcement notice shall state the specific violation with "a description of the requirements which have not been met, citing in each instance the applicable provisions of the ordinance," the zoning inspector's cease-and-desist notice in this case cited no violation basis, either in terms of an ordinance provision or a special exception provision or condition.

Accordingly, with no ordinance authority to deal with fertilizer type and no condition articulated with respect to that matter, the county zoning officials had no legal power to enter into that matter or to second-guess DER's approval of the fertilization choice in the land reclamation phase.

### 2. *Factual Finding—Immediate and Irreparable Harm*

■ Trial Judge Solomon expressly held that immediate and irreparable harm would result to Russell Minerals and its land, if the injunction were not granted. This conclusion is well founded upon his findings that:

(7) The area failed to vegetate properly and a DER representative suggested to the plaintiff, in 1991, that treated sewage sludge be applied to the topsoil as an organic fertilizer and conditioning agent, instead of using chemical fertilizers.

. . . .

(12) Alcosoil is a safe organic fertilizer and conditioner, and where properly applied, is safer and more efficient than chemical fertilizer, enabling reclaimed sites such as the one in issue to vegetate.

(13) That if the site does not vegetate properly, substantial erosion will occur, and the plaintiff will incur fines and penalties from DER.

These findings establish that Judge Solomon's preliminary injunction order has a reasonable basis in fact as well as law.

## CONCLUSION

Because the county officials lack any express authority to specify use of a particular type of fertilizer, because no regulation of fertilizer was embodied in, or implied by, the special exception as granted, and because the record shows that fertilizer is necessary to effect the reclamation of land without mishap, this court concludes that there is a reasonable basis for the preliminary injunction order prohibiting the county officials from interfering with the proposed fertilizer use.

The record solidly supports Judge Solomon's determinations that Russell Minerals has a clear legal right to relief and would suffer immediate and irreparable harm if the injunction were not granted.

For these reasons, the order is affirmed.

## *ORDER*

NOW, December 1, 1993, it is ORDERED that the order of the Court of Common Pleas of Fayette County, dated August 12, 1992, at No. 1492 of 1992, G.D., is hereby affirmed.